UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DONNIE SMITH,

  Plaintiff,

CASE NO.:

-VS-

OCWEN LOAN SERVICING, LLC,

  Defendant.
_____/

## COMPLAINT

COMES NOW Plaintiff, DONNIE SMITH, by and through the undersigned counsel, and sues Defendant, OCWEN LOAN SERVICING, LLC, and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 *et seq.* ("FCCPA").

## INTRODUCTION

1. The TCPA was enacted to prevent companies like OCWEN LOAN SERVICING, LLC from invading American citizen's privacy and prevent abusive "robo-calls."

2. "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, -US--, 132 S.Ct., 740, 745, 181, L.Ed. 2d 881 (2012).

3. "Senator Hollings, the TCPA's sponsor, described these calls as 'the **\*1256** scourge of modern civilization, they wake us up in the morning; they interrupt our

1

dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.'" 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

4. According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." *Fact Sheet: Wheeler Proposal to Protect and Empower Consumers Against Unwanted Robocalls, Texts to Wireless Phones*, Federal Communications Commission, (May 27, 2015), http://transition.fcc.gov/Daily_Releases/Daily_Business/2015/db0527/DOC-333676A1.pdf.

## JURISDICTION AND VENUE

5. This is an action for damages exceeding Fifteen Thousand Dollars ($15,000.00) exclusive of attorney fees and costs.

6. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

7. Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the

Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014)

8. The alleged violations described herein occurred in Polk County, Florida. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(2) as it is the judicial district in which a substantial part of the events or omissions giving rise to this action occurred.

**FACTUAL ALLEGATIONS**

9. Plaintiff is a natural person, and citizen of the State of Florida, residing in Polk County, Florida

10. Plaintiff is a "consumer" as defined in Florida Statute § 559.55(8).

11. Plaintiff is an "alleged debtor."

12. Plaintiff is the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

13. Plaintiff is the subscriber, regular user and carrier of the cellular telephone number (863) ***-6113, and was the called party and recipient of Defendant's calls.

14. Defendant, OCWEN LOAN SERVICING, LLC, is a corporation which was formed in Delaware with its principal place of business located at 1661 Worthington Road, Suite 100, West Palm Beach, Florida 33409 and which conducts business in the State of Florida through its registered agent, Corporation Service Company, located at 1201 Hays Street, Tallahassee, Florida 32301.

15. The debt that is the subject matter of this Complaint is a "consumer debt" as defined by Florida Statute §559.55(6).

16. Defendant is a "creditor" as defined in Florida Statute §559.55(5)

17. Defendant called Plaintiff on Plaintiff's cellular telephone approximately 400 times since August 1, 2015, in an attempt to collect a debt.

18. Defendant attempted to collect an alleged debt from Plaintiff by this campaign of telephone calls.

19. Upon receipt of the calls from Defendant, Plaintiff's caller ID identified the calls were being initiated from, but not limited to, the following phone number: 800-746-2936, and when that number is called, a pre-recorded message answers "Good afternoon and thank you for calling Ocwen where helping home owners is what we do. Para continuar en Español, oprima el dos. For quality assurance this call may be monitored or recorded."

20. Upon information and belief, some or all of the calls the Defendant made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls"). Plaintiff will testify that he knew it was an autodialer because of the vast number of calls he received and because he heard a pause when he answered his phone before a voice came on the line.

21. Beginning on or about August 1, 2015, Defendant began bombarding Plaintiff's cellular telephone number, (863) ***-6113, in an attempt to collect an alleged debt.

22. On or about September 1, 2015, Plaintiff answered a call from Defendant, met with an extended pause, held on the line to be connected to a live representative and informed an agent/representative of Defendant that he had spoken with them multiple times to come to an arrangement on payments and they are unwilling to modify the loan, that their incessant calls were harassing him and therefore they had nothing to talk about. Plaintiff demanded that the Defendant cease placing calls to his aforementioned cellular telephone number.

23. During the aforementioned call, on or about September 1, 2015, Plaintiff unequivocally and wholly revoked any previously perceived expressed consent to be called using Defendant's Autodialer, predictive dialer, artificial voice or prerecorded message.

24. Again, Plaintiff answered a call from Defendant, on or about June 1, 2016, and, once again, received Defendant's artificial or prerecorded message, held on the line to be connected to a live agent/representative and informed said agent/representative to immediately cease all calls to his cellular telephone; furthermore, Plaintiff informed Defendant's aforementioned agent/representative that the true account holder, his wife, Patricia Smith, had passed away in February of 2016.

25. Additionally, on or about June 1, 2016, due to the continued calls, Plaintiff contacted Defendant in an attempt to pay off the subject account in full and end the
---

harassment, at which time an agent/representative of Defendant, known only as Rockyn ID #100975, expressed to Plaintiff that he could not make a payment as he was not the true account holder. At that time, Plaintiff explained to Defendant's aforementioned agent/representative, once again, that the true account holder, his wife, Mrs. Smith, passed away in February of 2016, to which Defendant's aforementioned agent/representative again responded that he could not make payment of behalf of the true account holder.

26. Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of abuse, calling the Plaintiff despite the Plaintiff revoking any express consent the Defendant may have had to call her aforementioned cellular telephone number.

27. On at least three (3) separate occasions, Plaintiff answered a call from or returned a call to Defendant, held the line to be connected to a live representative, and demanded that Defendant cease placing calls to his aforementioned cellular telephone number.

28. The Plaintiff's requests for the harassment to end were ignored.

29. From approximately September of 2015 through the filing of this Complaint, or at such time as will be determined after a thorough review of Defendant's records, Defendant has called Plaintiff's aforementioned cellular telephone on a daily basis, despite Plaintiff's repeated requests for the calls to stop.

30. From about September 1, 2015 through the filing of this Complaint, Defendant has placed approximately eight hundred (800) calls to Plaintiff's

aforementioned cellular telephone number. (Please see attached **Exhibit "A"** representing a non-exclusive call log of at least seventy-four calls in a period from June 8, 2016 to August 16, 2016).

31. In continuing to receive calls from the Defendant, despite informing the Defendant that he was not the true account holder and that she had passed away in February of 2016, Plaintiff thought that the Defendant assumed he was lying, and that the only way to make the calls stop was to pay the debt.

32. Defendant intentionally harassed and abused Plaintiff on numerous occasions by calling several times during one day, and on back to back days, with such frequency as can reasonably be expected to harass.

33. Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice to individuals just as it did to Plaintiff's cellular telephone in this case.

34. Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice just as it did to Plaintiff's cellular telephone in this case, with no way for the consumer, Plaintiff, or Defendant, to remove the number.

35. Defendant's corporate policy is structured so as to continue to call individuals like Plaintiff; despite these individuals explaining to Defendant they wish for the calls to stop.

36. Defendant has numerous other federal lawsuits pending against it alleging similar violations as stated in this Complaint.

37. Defendant has numerous complaints across the country against it asserting that its automatic telephone dialing system continues to call despite requested to stop.

38. Defendant has had numerous complaints from consumers across the country against it asking to not be called; however, Defendant continues to call the consumers.

39. Defendant's corporate policy provided no means for Plaintiff to have his number removed from Defendant's call list.

40. Defendant has a corporate policy to harass and abuse individuals despite actual knowledge the called parties do not wish to be called.

41. Not a single call placed by Defendant to Plaintiff were placed for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

42. Defendant willfully and/or knowingly violated the TCPA with respect to Plaintiff.

43. From each and every call placed without consent by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of invasion of privacy and the intrusion upon his right of seclusion.

44. From each and every call without express consent placed by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of occupation of his cellular telephone line and cellular phone by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls while the phone was ringing from Defendant's calls.

45. From each and every call placed without express consent by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of unnecessary expenditure of his time.

For calls he answered, the time he spent on the call was unnecessary as he repeatedly asked for the calls to stop. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

46. Each and every call placed without express consent by Defendant to Plaintiff's cell phone was an injury in the form of a nuisance and annoyance to Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

47. Each and every call placed without express consent by Defendant to Plaintiff's cell phone resulted in the injury of unnecessary expenditure of Plaintiff's cell phone's battery power.

48. Each and every call placed without express consent by Defendant to Plaintiff's cell phone where a voice message was left which occupied space in Plaintiff's phone or network.

49. Each and every call placed without express consent by Defendant to Plaintiff's cell phone resulted in the injury of a trespass to Plaintiff's chattel, namely his cellular phone and his cellular phone services.

50. As a result of the calls described above, Plaintiff suffered an invasion of privacy. Plaintiff was also affect in a personal and individualized way including mental depression as a result of the constant reminder of his wife's death, by stress, anxiety, nervousness, embarrassment, distress and aggravation.

### COUNT I
**(Violation of the TCPA)**

51. Plaintiff fully incorporates and realleges paragraphs one (1) through fifty (50) as if fully set forth herein.

52. Defendant willfully violated the TCPA with respect to Plaintiff, especially for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified Defendant that he wished for the calls to stop.

53. Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

### COUNT II
**(Violation of the FCCPA)**

54. Plaintiff fully incorporates and realleges paragraphs one (1) through fifty (50) as if fully set forth herein

55. At all times relevant to this action Defendant is subject to and must abide by the laws of the State of Florida, including Florida Statute § 559.72.

56. Defendant has violated Florida Statute § 559.72(7) by willfully communicating with the debtor or any member of his or her family with such frequency as can reasonably be expected to harass the debtor or his or her family.

57. Defendant has violated Florida Statute § 559.72(7) by willfully engaging in other conduct which can reasonably be expected to abuse or harass the debtor or any member of his or her family.

58. Defendant's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute § 559.77.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

    Respectfully submitted,

    */s/ **Octavio Gomez***
    Octavio Gomez, Esquire
    Morgan & Morgan, Tampa, P.A.
    One Tampa City Center
    201 N. Franklin Street, 7th Floor
    Tampa, FL 33602
    Tele: (813) 223-5505
    Fax: (813) 223-5402
    Florida Bar #: 0338620
    TGomez@forthepeople
    Attorney for Plaintiff